JONES (Hollis), Plaintiff in error, v. STATE, Defendant in error.

*No. State 229 (1974). Argued September 9, 1975.—*
*Decided September 30, 1975.*
(Also reported in 233 N. W. 2d 441.)

For the plaintiff in error there were briefs by *Paula K. Lorant* and *Dennis W. Egre,* both of the Legal Aid Society of Milwaukee, and oral argument by *Mr. Egre.*

For the defendant in error the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HANLEY, J. Four issues are presented for review:

1. Was the stopping of the Bacon vehicle and the accompanying "frisks" of the occupants an act of officials' illegality, the fruits of which must be suppressed?

2. Was the arrest of defendant illegal as without probable cause, such that fruits of the arrest must be suppressed?

3. Was the search of the vehicle legal?

4. Should the trial court be required to review the sentence imposed?

*Legality of forced stop of vehicle.*

The defendant contends that the police officers needed "probable cause to arrest" before they could stop the vehicle he was occupying. He also admits the possible application of a lesser standard of "reasonable cause," *Adams v. Williams* (1972), 407 U. S. 143, 147, 92 Sup. Ct. 1921, 32 L. Ed. 2d 612, although disputing that the officers involved had information sufficient to satisfy either standard. It is settled law that, in certain circumstances, a police officer may:

". . . in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest. . . ." *Terry v. Ohio* (1968), 392 U. S. 1, 22, 88 Sup. Ct. 1868, 20 L. Ed. 2d 889.

Such approaches may involve forcible stops that amount to "seizures" under the fourth amendment. *Id.* at 19.

*Terry,* of course, addressed itself mainly to the weapons "frisk" that might accompany an investigative stop. While the constitutional propriety of the investigative seizure was not answered by *Terry* (*Id.* at 19 and n. 16), the decision does supply implicit recognition of the "legitimate investigative function." Moreover, the decision in *Adams v. Williams, supra,* recognized that a police officer has alternatives to the traditional arrest; a brief stop to obtain information may be most reasonable, even if probable cause to arrest is lacking. *Id.* at 145, 146.

Citing *Terry,* the court proposed that the fourth amendment:

". . . does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. . . . [I]t may be the essence of good police work to adopt an intermediate response." *Adams, supra,* page 145.

In *Adams,* an officer was advised by an individual known to him that a person seated in a nearby vehicle possessed narcotics and carried a gun at the waist. When the seated individual rolled down a window in response to the officer's request to open the door, the policeman reached in and removed the hidden revolver. The arrest for unlawful weapon possession and its incidental full search were not found to be acts of official illegality.

*Adams* also indicated that the *Terry* doctrine was flexible in other ways. The court noted that the "reasonable cause" for a stop need not be based on the officer's personal observations. Reports from informants, although not meeting the *Spinelli-Aguilar* tests for sufficient reliability, may still justify a forcible stop. *Adams, supra,* at 147. Thus, the "reasonable cause" standard is a viable doctrine capable of various applications.

The "reasonable cause" doctrine has been followed in Wisconsin also. The *Adams* ruling was adopted in *State v. Chambers* (1972), 55 Wis. 2d 289, 198 N. W. 2d 377. The nature of the "intermediate response" allowed was more fully discussed in *State v. Beaty* (1973), 57 Wis. 2d 531, 536–540, 205 N. W. 2d 11. After noting that an arrest involves the detaining of a person by word or action, with the intent to take him into custody and the person's corresponding understanding that he is in custody, this court distinguished the arrest from an investigative stop:

"An arrest, . . . is 'inevitably accompanied by *future interference* with the individual's freedom of movement, whether or not trial or conviction ultimately follows.' Obviously, stopping a suspect to question him—and to frisk him for weapons—does not involve such certainty of continued or future restraint. It may, but not necessarily so." (Emphasis in original.) *Id.* at 537, quoting *Terry, supra,* at 26.

The defendant disputes that *Terry* may be extended to situations where an automobile must be stopped to initiate the investigation. His contention is that the presence of the automobile alters the balance and makes "reasonable cause" a too minimal standard to protect the great and more numerous constitutional rights infringed upon by the stops. This contention is expressly refuted by *Terry:* One cannot seek to isolate from constitutional scrutiny the contacts involved by suggesting a rigid all-or-nothing model of justification and regulation. *Id.* at 17. The automobile's presence is not a controlling distinction that dictates a standard different from temporary seizures of pedestrians. Its effect may be felt in measuring whether the acts of the officers were reasonable.

This court has had occasion to follow *Terry* and *Adams* in automobile situations. In *State v. Williamson* (1973), 58 Wis. 2d 514, 206 N. W. 2d 613, the court believed

an investigatory stop was justified after the defendant
drove a circuitous route, pulled to the curb and pretended
to stop in the presence of a squad car. Noting that the
engine was still running and that the driver did not exit
after opening the door, the squad returned to the area.
The driver again pretended to stop. Unsatisfactory and
evasive answers provoked a frisk that uncovered bullets.
Thereupon, a full search of the vehicle produced a re-
volver. The orderly mounting of justification to arrest
began with the valid suspicion-based stop.

A temporary investigative stop of one possessing in-
formation as to a crime may certainly be reasonable,
depending upon the exigencies of the situation. Here, the
particular facts involving the defendant raise reasonable
suspicions that he was more than just a possible source of
information. A brief investigative stop was justified to
determine even that slight status. There were more im-
plicating facts and a view of another occupant of the
vehicle that tended to confirm such implication.

Jones was not a suspect for the actual commission of
the holdup. The victim knew him and confirmed that
fact. The armed intruder had been described by Whittley
as:

"A black male, 25 to 30 years of age, five foot 10, six
feet tall, 170, medium build, medium complexion having
an afro hair style, bumpy skin, bare headed, long sleeve
red knit shirt, gray trousers with black pin striping,
boot-type shoes."

The officers knew that the victim had given this de-
scription by telephone to his girl friend McCants prior
to their arrival and that she maintained to them that she
had seen such a person at a tavern owned by Whittley
and operated by them less than an hour before the rob-
bery. She stated that the suspect then had been in the
company of her brother, the defendant. Although the
victim did not know his assailant, the robber referred to
the victim by name. The victim and Jones' sister alleged
that Jones had robbed him before on a "same type of

occasion" and both expressed the belief that Jones was involved again. Officer Leffler was acquainted with the defendant and knew he had a criminal record.

Under the above circumstances, it was not unreasonable for the officers to search for the defendant in the hopes of meeting his possible companion or at least obtaining information as to the latter and his whereabouts during the time of the robbery. The view of the defendant in the company of a young, red-shirted black male a few hours after the crime reinforced the justified suspicions prompting the intended investigative stop.

*Arrest of Jones.*

Jones also attacks the validity of his arrest. If the stopping of the vehicle did not constitute an arrest, he then contends that an arrest occurred when he was ordered from the vehicle and frisked by Officer Wiesmueller. He was also ordered to raise his hands and the officer had his gun drawn.

At this time, Officer Leffler had ordered the driver to exit and was frisking him also. Walker, in the rear seat, was also ordered out of the car. It is clear that Jones was not singled out for specific scrutiny.

*Terry* noted that an officer engaged in investigatory stops has a right, for his own safety, to "pat down" those he has stopped. An investigation into an armed robbery where a pistol was involved implies the likelihood of danger justifying a frisk. The fact that a weapon was drawn by the officer does not transform the act into an arrest. *United States v. Maslanka* (5th Cir. 1974), 501 Fed. 2d 208, 213 footnote 10.

In the further alternative, Jones argues that no "probable cause" existed when he was conveyed to the detective bureau. At that point, an arrest under *Beaty* undoubtedly occurred. Defendant's contentions as to a lack of probable cause are without merit.

Officer Wiesmueller had confirmed that the rear seat passenger matched the full, specific description of the

armed robber. After noting the illegal sawed-off shotgun on the floor below the suspect, Wiesmueller handcuffed and interrogated him. An apparent confession of the robbery resulted with Walker indicating that the stolen items were in the car. Jones, meanwhile, had indicated to Officer Leffler that Walker was involved in Whittley's robbery and that a revolver was under the front seat. Although there is no indication that Walker implicated Jones in his statement to the officers, there was a sufficient nexus between the activities of Jones and Walker, culminating in their joint presence in a vehicle containing the robbery's fruits only a few hours after the crime, to constitute probable cause to arrest Jones as a party to the crime. Probable cause is not ". . . that quantum of evidence which might later support a conviction, rather it is '. . . that quantum of evidence which would lead a reasonable police officer to believe that the defendant probably committed a crime.' " *Ball v. State* (1973), 57 Wis. 2d 653, 659, 205 N. W. 2d 353.

The arrest being valid, there is no arguable merit to defendant's claim that his subsequent incriminating statements must be suppressed.

*Vehicle search.*

Defendant challenges the search of the vehicle, subsequent to his arrest, on two grounds: (1) Their presence to search the vehicle was the fruit of official illegality, and (2) the consent to search was not voluntary.

Since the investigative stop of the vehicle was valid as was the arrest of Jones and Walker, the access to search the vehicle was not a product of illegal detention, as proscribed in *Davis v. Mississippi* (1969), 394 U. S. 721, 89 Sup. Ct. 1394, 22 L. Ed. 2d 676.

Defendant attacks the consent to search the vehicle given by its owner-driver, Raymond Bacon. In his motion to suppress, Jones asserted the lack of his consent to the search without any reference to the voluntariness of the consent of Bacon. The trial court considered Bacon's

consent and properly so. It was elicited from Officer Leffler that Bacon's ownership of the vehicle was confirmed by a radio check. Bacon was shown the shotgun on the back seat and he was then advised that he need not consent to the search. Leffler further testified that assent to search was given after Jones and Walker were either in a patrol wagon or on their way to the station. The trial court was satisfied that the consent was voluntarily given. We agree.

*Sentence reduction.*

Defendant Jones originally moved for modification of sentence on June 21, 1973. In an exhaustive memorandum, the trial court justified the sentence imposed. More than a year later, on June 27, 1974, the defendant again sought modification.

The trial court apparently felt it had no jurisdiction in the matter. This court has reiterated in *State v. Foellmi* (1973), 57 Wis. 2d 572, 205 N. W. 2d 144, that the ninety-day limit for motions to reconsider sentence, *Hayes v. State* (1970), 46 Wis. 2d 93, 175 N. W. 2d 625, was regulatory rather than jurisdictional. Thus, the trial court could entertain motions beyond that time in the exercise of its discretion, given good reason for the delay. It is difficult to discern here whether the refusal to proceed on the motion was an act of discretion or a mistake as to jurisdiction.

No error resulted, however, because *Foellmi* also directed that only "new factors" may justify sentence modification. The matters raised by defendant's motion were either elaborations of matters fully considered at his sentencing and previous reduction hearing or were reports of defendant's progress in the rehabilitation system. The former were not "new" and the latter are matters more properly considered by the department of health and social services.

The recent decision of *State v. Wuensch* (1975), 69 Wis. 2d 467, 230 N. W. 2d 665, allows the trial court to

review its own sentence for abuse of discretion, *i.e.*, unduly harsh or unconscionable sentences, even if no "new factors" are present.

Although no time limit was expressed in *Wuensch* as to govern the presentation of such a motion, it is apparent that the ninety-day limit of *Hayes* be followed. Rulings by this court on claimed abuse of discretion have been withheld if a timely motion was not made below. *Farley v. State* (1971), 50 Wis. 2d 113, 115, 183 N. W. 2d 33; *Stockwell v. State* (1973), 59 Wis. 2d 21, 28, 207 N. W. 2d 883; *Gaddis v. State* (1974), 63 Wis. 2d 120, 129, 216 N. W. 2d 527. Such procedure should be followed now.

Much of the matter in defendant's second motion arguably pertaining to abuse of discretion was considered in his previous motion for reduction. Denial of that motion was based on the trial court's belief that the motion had no merit, not on a belief that the court lacked the power to correct an abuse. The refusal to modify sentence on the factors raised in that timely motion gave rise to an avenue of appeal. Jones instead chose to wait and resubmit his contentions along with irrelevant factors believed to be "new matter."

No reason exists for returning this motion to. reconsider sentence to the trial court. The issue of abuse of discretion was specifically raised in the June, 1973; motion and was fully answered at that time. No error under *Wuensch* was thus committed, since the trial court cannot be faulted for not fully demonstrating the exercise of discretion on matters answered by it at the first motion. Successive motions for postconviction relief, raising the same issues and seeking the same relief, need not be entertained. *State v. Wills* (1975), 69 Wis. 2d 489, 492, 230 N. W. 2d 827.

*By the Court.*—Judgment and order affirmed.