WENDRICKS, Plaintiff in error, v. STATE, Defendant in error.

*No. 75–133–CR. Argued May 5, 1976.—Decided June 2, 1976.*
(Also reported in 242 N. W. 2d 187.)

718

720

For the plaintiff in error there were briefs by *Howard B. Eisenberg*, state public defender, and *Richard M. Sals*, assistant state public defender, and oral argument by *Richard M. Sals*.

For the defendant in error the cause was argued by *Marguerite M. Moeller*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

HANLEY, J. Three issues are presented on this appeal:

1. Was there "reasonable cause" for the forcible stop of the taxicab?

2. Did probable cause exist for the subsequent arrest of its passengers?

3. Were the weapons and bag of money obtained as the fruits of invalid police activity and thus inadmissible into evidence?

*Vehicle stop.*

Wendricks contends that an arrest occurred when the taxicab was forced to stop, or at least occurred when he was ordered to exit from the cab. Noting that the Fourth Amendment of the United States Constitution and art. I, sec. 11 of the Wisconsin Constitution have been held to uniformly compel the state to possess "probable cause to believe that the apprehended person is committing or has committed a crime," *Leroux v. State* (1973), 58 Wis. 2d 671, 207 N. W. 2d 589, as a prerequisite for a valid arrest, the defendant claims an insufficiency of this standard here and characterizes the seized evidence as tainted by an invalid seizure depriving him of his rights. Defendant's position was not altered even when the state called attention to the justification of a temporary investigative stop, an intrusion into the affairs of a person that does not amount to an arrest and thus does not demand that the instigating officer possess "probable cause."

The Fourth Amendment certainly does protect the "security of one's privacy against arbitrary intrusion by the police." *Schneckloth v. Bustamonte* (1973), 412 U. S. 218, 242, 93 Sup. Ct. 2041, 36 L. Ed. 2d 854. There is a recognized distinction, however, in the appropriate levels of protection afforded by the Fourth Amendment to the different forms of intrusion.

In the recent decision of *Jones (Hollis) v. State* (1975), 70 Wis. 2d 62, 233 N. W. 2d 441, this court repeated its earlier recognition of the doctrinal validity of brief investigative stops and held such seizures available even

when the individual is in an automobile in transit. *See also: State v. Chambers* (1972), 55 Wis. 2d 289, 198 N. W. 2d 377; *State v. Beaty* (1973), 57 Wis. 2d 531, 205 N. W. 2d 11; *State v. Gums* (1975), 69 Wis. 2d 513, 230 N. W. 2d 813; as to vehicles, *see: State v. Williamson* (1973), 58 Wis. 2d 514, 206 N. W. 2d 613; *Anderson v. State* (1974), 66 Wis. 2d 233, 223 N. W. 2d 879.

*Terry v. Ohio* (1968), 392 U. S. 1, 88 Sup. Ct. 1868, 20 L. Ed. 2d 889, proposed this constitutional doctrine and *Adams v. Williams* (1972), 407 U. S. 143, 92 Sup. Ct. 1921, 32 L. Ed. 2d 612 reaffirmed that a police officer could stop a person for interrogation even though he lacks probable cause to make an arrest. Despite this recognition, it must frankly be admitted that the distinction between an arrest and an investigatory stop is not of easy delineation. The factual contexts of different situations may cause equally differing conclusions on similar police procedures, as facts gathered under a proper temporary seizure may justify an immediate arrest.

Pertinent to the validity of an investigative stop is whether the facts available to the officer at the moment of the seizure warrant a man of reasonable caution in the belief that the action taken was appropriate. *Terry, supra,* at page 22. Exercise of this power under *Terry* must be gauged by an objective standard: to justify a forcible stop through the exercise of authority, the officer must present the court with "specific and articulable facts which, taken together with rationale inferences from those facts, reasonably warrant that intrusion." *Id.* at pages.20–22.

In justifying the stop here, Solcz cited the timely report of a weapon incident at a store on Main Street and the following report that the "suspects" were seen fleeing on the frozen river, which was closely situated south of the store, at an approximate location only a few blocks to the west. Upon further patrolling, Solcz noted that he

was being closely observed by two passengers in a taxi parked only a block north of the last reported sighting of the suspects and a few blocks directly west of the store. Although the state and defendant disagree over the interpretation to be given to the taxi's return to Main Street immediately prior to its stop, the record indicates that the decision to pull it over was made earlier, as evidenced by Solcz' radio call for backup assistance.

We think Officer Solcz had reasonable suspicion to believe that Wendricks was involved in the reported incident when he first stopped the taxicab carrying the defendant. The testimony establishes a situation quite distinguishable from occasions when an officer acts solely because a person merely glances at him. The prolonged state of observation by two men (thus meeting the expected plurality of suspects) in an anticipated location based on the reported incident and subsequent sighting justified a forcible stop, especially when the individuals were in a vehicle capable of removing them from the vicinity of the scene of the crime. As *Jones v. State, supra,* acknowledged, the presence of a vehicle may operate to justify a stop when only further observation would be justified in the case of pedestrians.

*Legality of arrest.*

It is a question of fact precisely when, in each case, the arrest took place. *Sibron v. New York* (1968), 392 U. S. 40, 88 Sup. Ct. 1889, 20 L. Ed. 2d 917. Defendant here has relied on cases decided prior to the development of the "reasonable cause" doctrine, especially *Huebner v. State* (1967), 33 Wis. 2d 505, 147 N. W. 2d 646, which interpret any imposition of authority by a police officer as an arrest and as tainting any consequently derived evidence if "probable cause" to arrest was lacking. In *State v. Beaty, supra,* this court limited and distinguished *Huebner* in light of *Terry.*

Solcz testified that he placed the defendant and his companion under "custody" after the snowy and slushy condition of their shoes was observed. The conclusion expressed in the term does not always equate with arrest but it is clear in this case that Officer Solcz considered the taxi passengers as arrested at that point. For that arrest to be valid, there must exist that quantum of evidence which would lead a reasonable police officer to believe that the subjects had probably committed a crime. *Ball v. State* (1973), 57 Wis. 2d 653, 659, 205 N. W. 2d 353.

Given a stop for investigative purposes, officers are allowed to take necessary measures for their own protection. *Terry, supra;* sec. 968.25, Stats. In *Jones v. State, supra,* an officer unholstered his sidearm while approaching a vehicle on the side containing a suspected armed robber. His companion approaching on the other side did not have a weapon drawn. Neither the unholstered weapon nor the ordered exit of passengers transformed the initial investigative stop of the vehicle into an arrest. When a pilot failed to stop the engines of his plane while in preparation for takeoff despite such an order by authorities, the court in *United States v. Richards* (9th Cir. 1974), 500 Fed. 2d 1025, found a subsequently drawn weapon a necessary use of force to compel the person to acquiesce in the nonarrest investigative detention. This case acknowledged that the extent and manner of the approach and detention must also be gauged by the reasonableness standard. Defendant suggests that the frontal blocking of the taxicab with a patrol car was an excess of force amounting to an arrest and requiring arrest justification, but this argument ignores the futility and misleading effect that could have resulted if Solcz merely engaged his warning flashers while entering into the traffic flow of the lane leading in the opposite direction. The officer's order that passen-

gers, suspected by the officer of participating in an armed robbery, emerge from the vehicle is a reasonable choice of available options for the protection of himself and the driver.

Before Wendricks even emerged from the taxi, he stated that they had just come from a nearby tavern located in the snow-free municipal area. The condition of their shoes immediately contradicted this statement and linked them to the nearby source of snow where the store robbery participants were last seen. Solcz was aware of the radio progress reports of the crime and the flight and was entitled to rely on them as his basis for arrest. *State v. Taylor* (1973), 60 Wis. 2d 506, 210 N. W. 2d 873; *State v. Shears* (1975), 68 Wis. 2d 217, 253, 229 N. W. 2d 103.

*Seizure of evidence.*

No argument is made that the search of the vehicle was illicit if the preceding arrest was valid as demonstrated. From the record, it is shown that Officers Parins and Baenen did not arrive until after the taxi passengers had exited and provided the grounds for arrest. Other policemen had in fact preceded these officers to the scene. There is no contention by defendant that the scope of *Chimel v. California* (1969), 395 U. S. 752, 89 Sup. Ct. 2034, 23 L. Ed. 2d 685 was exceeded by the incidental search.

We conclude that the search of the taxicab was consistent with subs. (1) and (2) of sec. 968.10, Stats., which provide as follows:

"**Searches and seizures; when authorized.** A search of a person, object or place may be made and things may be seized when the search is made:
"(1) Incident to a lawful arrest;
"(2) With consent;
". . ."

Here the search was incidental to a lawful arrest and consented to by the cab driver, Mr. Habeck.

*By the Court.*—Judgment affirmed.