DENIS R. VOGEL, District Attorney Manitowoc County
You ask whether a police officer may stop a motorist to check for a valid driver's license if the stop is made solely on the basis of a telephone message from an anonymous caller, who informs the police department that the motorist will be driving a vehicle with a specified license plate and that the motorist does not have a valid driver's license. If these are the only facts known to the police officer, it is my opinion that an officer may not lawfully stop the motorist to check for a valid driver's license.
The police officer described in your facts was engaged in an investigatory auto stop, the halting of a motor vehicle and the brief detaining of its driver for the limited purpose of determining whether a violation of the law had or was occurring. Though such police activity may typically involve only a temporary detention and a relatively *Page 348 
minor intrusion upon the individual's privacy and security, it nonetheless constitutes a "seizure" within the meaning of thefourth amendment to the United States Constitution and Wis. Const. art. I, sec. 11.
The constitutional dimensions of an investigatory detention of an individual were first articulated in Terry v. Ohio, 392 U.S. 1,16 (1968), in the case of a police officer's "stop and frisk" of a pedestrian:
 It is quite plain that the Fourth Amendment governs "seizures" of the person which do not eventuate in a trip to the station house and prosecution for crime — "arrests" in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person.
In subsequent cases the Supreme Court has extended this holding to auto stops. In the most recent decision, Delaware v. Prouse,99 S.Ct. 1391 (1979), the Court stated: "The Fourth andFourteenth Amendments are implicated . . . because stopping an automobile and detaining its occupants constitutes a `seizure' within the meaning of those Amendments, even though the purpose of the stop is limited and the resulting detention quite brief."Id. at 1396 (citing United States v. Martinez-Fuerte, 428 U.S. 543
(1976) and United States v. Brignoni-Ponce, 422 U.S. 873
(1975)). The Wisconsin Supreme Court had reached the same conclusion in a number of earlier decisions. See, e.g., Wendricksv. State, 72 Wis.2d 717, 242 N.W.2d 187 (1976); Jones (Hollis)v. State, 70 Wis.2d 62, 233 N.W.2d 441 (1975); State v.Williamson, 58 Wis.2d 514, 206 N.W.2d 613 (1973).
Accordingly, an investigatory auto stop must meet the "reasonableness" standard of the search and seizure provisions of both the federal and state constitutions. This standard requires, "at a minimum, that the facts upon which an intrusion is based be capable of measurement against `an objective standard,' whether this be probable cause or a less stringent test." Delaware v.Prouse, 99 S.Ct. at 1396 (citations omitted). An investigatory stop clearly need not meet the test of probable cause required for a lawful arrest. The stop and the consequent temporary detention are "an intrusion into the affairs of a person that does not amount to an arrest and thus does not *Page 349 
demand that the instigating officer possess `probable cause.'"Wendricks, 72 Wis.2d at 722. Instead, it is now well-settled that a less stringent, but equally objective, standard is applicable. The Wisconsin Supreme Court has stated the test for an investigatory traffic stop in the following manner: "to justify a forcible stop through the exercise of authority, the officer must present the court with `specific and articulablefacts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" Id. at 723 (quoting from Terry v. Ohio, 392 U.S. at 20-22) (emphasis added). While recently outlawing random stops of motorists in Delaware v.Prouse, the United States Supreme Court described a more cogent standard for investigatory auto stops:
 [W]e hold that except in those situations in which there is at least articulable and reasonable suspicion
that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.
99 S.Ct. at 1401 (emphasis added).[1]
It is now clear that before an officer can conduct an investigatory auto stop the officer must at least have an "articulable and reasonable suspicion" that the motorist is unlicensed or that the driver or the auto has in some other respect violated the law. The more specific and critical issue raised by your opinion request is whether an anonymous tip of the type you have described would give rise to the required "articulable and reasonable suspicion." I believe it would not, for the basic reason that your anonymous tipster's information, by itself, could not be accepted as reliable and was therefore incapable of creating a "reasonable" suspicion of criminal activity by the motorist involved. *Page 350 
It is beyond dispute that in effecting a "seizure" of an individual — either an arrest or a temporary investigatory detention — an officer can rely on information supplied by others and is not limited to facts personally observed. Where an officer seeks to act on information from others, however, evidence of the reliability of the information is required. The required showing of reliability will vary with the nature of the police action taken, greater informational reliability being required to justify an arrest or the issuance of a search warrant, Spinelli v. United States, 393 U.S. 410 (1969); Aguilarv. Texas, 378 U.S. 108 (1964), than a mere stop and frisk, Adamsv. Williams, 407 U.S. 143 (1972).
Adams provides an excellent illustration of the difference between the degrees of informational reliability required for an arrest and a temporary stop. In Adams, a patrolman was approached by an informant known to the officer and told that an individual in a nearby car was carrying narcotics and a concealed weapon. The officer then approached the suspect, frisked him and found the reported gun, and placed him under arrest. The Supreme Court held that the stop and frisk was lawful. Concededly, the informant's tip did not provide probable cause for an arrest.407 U.S. at 145. But because the informant was personally known to the officer and had given him information in the past, the Court ruled that "the information carried enough indicia of reliability to justify the officer's forcible stop." Id. at 146-47.
The tipster's information in your facts fails to satisfy even the relatively low reliability showing required for a stop and frisk or investigatory auto stop. The caller apparently offered no explanation of the source of the information provided; i.e., whether it was based upon the caller's personal knowledge, a report from another person, idle speculation or spiteful imagination. More important, the caller was anonymous and thus the information was naturally suspect.
As the Supreme Court noted in Adams, information from an informant known personally to an officer "is a stronger case than obtains in the case of an anonymous telephone tip."407 U.S. at 146. On the strength of this language, most courts considering the question have held that information from an anonymous informant cannot reasonably justify an investigatory stop. See,e.g., United States v. Pearce, 356 F. Supp. 756 (E.D. Pa. 1973);Jackson v. State, 157 Ind. App. 662, 301 N.E.2d 370 (1973);People v. De Bour, *Page 351 40 N.Y.2d 210, 386 N.Y.S.2d 375, 352 N.E.2d 562 (1976); Commonwealth v.Cruse, 236 Pa. Super. 85, 344 A.2d 532 (1975); State v. Lesnick,84 Wash. 2d 490, 530 P.2d 243 (1975). Moreover, the Wisconsin Supreme Court has held that information from an anonymous telephone informant is "not possessed of even minimal `indicia of reliability.'" Bies v. State, 76 Wis.2d 457, 4701 251 N.W.2d 461
(1977).
Because the informant in your facts was anonymous, the police could only speculate whether the information was true or false, and whether the informant was a public-spirited citizen or a malicious prankster. Accordingly, the anonymous call provided no reliable basis for a "reasonable suspicion" that the identified motorist was driving without a license. The subsequent investigatory stop of the motorist, based solely on the telephone call, was unreasonable and improper.
Please note that my opinion is limited simply to the facts you have described, and should not be read as a blanket assertion that a stop and frisk or investigatory auto stop can never be premised on an anonymous tip. As the Supreme Court cautioned inAdams, 407 U.S. at 147: "Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability. One simple rule will not cover every situation." There may well be circumstances in which the need for immediate law enforcement action is so great that even serious doubts about the reliability of an informant and his information should not be allowed to deter prompt police action. The supreme court of Washington made this point very well in a decision invalidating a stop of a suspect in response to an anonymous telephone message that the suspect was in possession of gambling devices:
 Terry [v. Ohio] and Adams [v. Williams] emphasize that no single rule can be fashioned to meet every conceivable confrontation between the police and citizen. Evaluating the reasonableness of the police action and the extent of the intrusion, each case must be considered in the light of the particular circumstances facing the law enforcement officer. In this case, the suspected crime was a gross misdemeanor. It posed no threat of physical violence or harm to society or the officers. . . . This is quite a different matter from . . . tips involving murder or threatened school bombings. . . . *Page 352 
State v. Lesnick, 530 P.2d at 246. See also, People v. Taggart,20 N.Y.2d 335, 283 N.Y.S.2d 1, 229 N.E.2d 581 (1967); In theInterest of H.B., 75 N.J. 243, 381 A.2d 759 (1977). On the basis of this reasoning, I believe it would be reasonable — and indeed commendable — for the police to conduct a forcible stop of a suspect upon anonymous information when the information regards a threatened loss of life, serious injury, or significant property damage. The same police response would be inappropriate, however, when the information relates merely to a minor offense.
I trust you will also not read my opinion to suggest that the police in your facts should have made no response to the anonymous message. On the contrary, I believe the call gave the police sufficient reason to look into the matter further, by means short of a forcible intrusion upon the fourth amendment rights of the possible violator. As the Supreme Court noted inAdams, 407 U.S. at 147: "Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized." In your case, an identification of the name of the motorist involved (if it was not reported by the anonymous caller) and an advance records check with the Division of Motor Vehicles would likely have revealed that the motorist's license was invalid. That information, obviously reliable, would unquestionably have created a reasonable suspicion justifying a later forcible stop, if not probable cause for an outright arrest.
DJH:WLG
[1] An important exception to this rule, not at issue in your opinion request was also articulated in Prouse: the Court noted that its holding does not prohibit a roadblock-type traffic stop where all drivers are subject to questioning and license examination. 99 S.Ct. at 1401.