STATE of Wisconsin, Plaintiff-Respondent,

v.

Jonas M. WASHINGTON, Defendant-Appellant.†

Court of Appeals

No. 83–1804–CR. Submitted on briefs August 15, 1984.—
Decided September 25, 1984.

† Petition to review granted.

656

For the defendant-appellant the cause was submitted on the briefs of *William J. Tyroler,* assistant state public defender, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, with *Thomas J. Balistreri,* assistant attorney general of counsel, of Madison.

Before Wedemeyer, P.J., Moser and Sullivan, JJ.

WEDEMEYER, P.J.   Defendant, Jonas Washington, appeals from a conviction of burglary (party to a crime), contrary to secs. 943.10(1)(a) and 939.05, Stats. He argues that the trial court had no personal jurisdiction over him because the police had no reasonable grounds to arrest him or to stop his car. He also argues that evidence seized following searches of himself and his car should be suppressed. We conclude that although the police had sufficient grounds for a brief investigatory stop of defendant's car, the state did not establish that the police had probable cause to believe three watches in defendant's possession were subject to seizure as evidence of a crime. We further conclude that with-

out the watches, there was no probable cause to arrest defendant or to search the car.

We hold, however, that because the police would have inevitably found the stolen display case in plain sight on the rear seat of the car independently of the unlawful search and arrest of defendant, the display case need not be suppressed. We further hold that because the display case would have provided probable cause to arrest defendant, the complaint need not be dismissed for lack of personal jurisdiction. Additionally, because the police would have inevitably found the three watches on a station house inventory search of defendant pursuant to the arrest, the watches need not be suppressed. We therefore affirm defendant's conviction.

The testimony presented at the hearing on defendant's motion to suppress evidence and dismiss for lack of jurisdiction was as follows. Officer Bacon of the Wauwatosa Police Department testified that on November 22, 1982, at approximately 1:13 a.m., he received a radio call regarding an alarm at a jewelry store located in the 8700 block of North Avenue. An exhibit admitted at the hearing shows that the jewelry store is on the south side of North Avenue, almost directly across from Pasadena Boulevard, a north-south street which runs into North Avenue to form a T-intersection. As Bacon was driving on North Avenue toward the store, he saw a station wagon with its lights off in the intersection of North and Pasadena, traveling north on Pasadena, away from the store. The station wagon did not turn its lights on until it had traveled three-quarters of a block north on Pasadena. There were no other cars or pedestrians on North Avenue at that time. When Bacon reached the store, he noted that the door was ajar and one of the display cases had been broken into.

Officer Bozicevich testified that he arrived at the jewelry store at approximately 1:15 a.m. There were

no other cars on North Avenue at that time. Bacon told him about the station wagon, and Bozicevich broadcast over the radio that the jewelry store had been broken into and that a station wagon with no lights on had been seen northbound on Pasadena about the time of the alarm.

Officer Sengbusch testified that he heard the 1:13 a.m. call regarding the jewelry store and that he saw two cars eastbound in the 8500 block of Center Street, four blocks north of North Avenue, at approximately 1:15 a.m. He decided to stop the older car first, but noticed that the other was a dark-colored General Motors station wagon, possibly a Chevrolet, with Wisconsin plates NB7126 or NB2176. The station wagon turned off of Center as Sengbusch approached. When he heard Bozicevich's radio broadcast that a station wagon might have been involved in the burglary, he turned back to look for the wagon but was unable to find it. He gave the police dispatcher his description of the wagon at approximately 1:16 a.m.

Officer Welter of the Milwaukee Police Department testified that he received a radio transmission that a Chevrolet station wagon with Wisconsin license number NB 7126, or a variation of that number, was wanted for a Wauwatosa burglary. At approximately 1:20 a.m., he saw a station wagon with those plates eastbound in the 3300 block of Center Street and pulled it over at the corner of 29th and Center Streets to conduct an investigation. His squad car stopped behind the wagon and an assisting squad stopped alongside. When he approached the wagon he had a shotgun pointed in the air, but did not know whether any other officers had drawn guns.[1]

---

[1] Defendant testified that two officers had shotguns drawn and that the guns were pointed at his car. He also testified that one squad car stopped behind his car and another pulled in front.

Welter ordered defendant to exit the car and then frisked him for weapons. He felt three watches, and discovered that the watches had tags from the Wauwatosa jewelry store on them. He arrested defendant after he found the watches, and then observed a two-foot-long plexiglass display case containing "a large amount" of necklaces on the rear seat of the station wagon.

Defendant moved to suppress the watches and the display case and to dismiss for lack of personal jurisdiction. The trial court found the officers' actions reasonable in all respects and denied defendant's motion. Defendant was found guilty of burglary.

*Stop of Defendant's Car*

Where an officer lacks probable cause to arrest, but has reason to believe an individual may be involved in the commission of a crime, the officer may stop the individual for questioning. *State v. Flynn*, 92 Wis. 2d 427, 433, 285 N.W.2d 710, 712 (1979), *cert. denied*, 449 U.S. 846 (1980). To justify a forcible stop through an exercise of authority, the officer must present the court with " 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' " *Wendricks v. State*, 72 Wis. 2d 717, 723, 242 N.W.2d 187, 191 (1976), *quoting Terry v. Ohio*, 392 U.S. 1, 21 (1968). Officers may stop an automobile if they have an "articulable and reasonable suspicion that . . . either the vehicle or an occupant is . . . subject to seizure for violation of law." *Delaware v. Prouse*, 440 U.S. 648, 663 (1979). Where the facts

---

The trial court found that defendant had been the subject of a stop, not an arrest, but it did not resolve the conflicts in the testimony. The conflicts must be resolved in favor of the trial court's findings. *State v. Flynn*, 92 Wis. 2d 427, 437, 285 N.W.2d 710, 714 (1979), *cert. denied*, 449 U.S. 846 (1980).

are undisputed, we independently determine whether fourth amendment standards of reasonableness are met, without deferring to the trial court's conclusions. *State v. Drogsvold,* 104 Wis. 2d 247, 262, 311 N.W.2d 243, 250 (Ct. App. 1981).

Sufficient grounds existed for an "articulable and reasonable suspicion" to justify an investigatory stop of defendant's car. Only a few minutes after receiving a radio call about the jewelry store, an officer observed a station wagon very near the store, driving away from it. No other cars and no pedestrians were on the street. It was night, but the car drove nearly a block before its headlights were turned on. This provided a basis for an articulable and reasonable suspicion that the station wagon's occupants had something to do with the burglary of the store. A few minutes later, a station wagon was observed a few blocks away from the jewelry store, one of only two cars (and the only station wagon) on the road. It was reasonable, given the short distance to the jewelry store and the absence of vehicles on the road, for the officer to suspect that that station wagon was the one seen near the store. He reported its license number, and defendant's car eventually was stopped. The stop meets the *Prouse* and *Terry* standards. Defendant's reasonable expectation of privacy was not invaded merely at " 'the discretion of the official in the field.' " *Prouse,* 440 U.S. at 655 (citation omitted).

Defendant argues that he was arrested, not merely stopped, at his initial contact with the police. He concedes that a stop is not converted into an arrest simply because guns are drawn. *See Jones v. State,* 70 Wis. 2d 62, 70, 233 N.W.2d 441, 445–46 (1975). He argues, however, that here the use of force by the police, including stopping him at gunpoint, the use of four officers to

detain two suspects, the alleged blocking in of his car, and the intensive frisk, establishes that this was not merely an investigative detention. *See United States v. Merritt*, 695 F2d 1263, 1274 (10th Cir. 1982), *cert. denied*, 103 S. Ct. 1898 (1983) (brief stop may be rendered arrest by excessive show of force).

The extent and manner of the police's approach and detention of a suspect must be gauged by the reasonableness standard. *Wendricks*, 72 Wis. 2d at 725, 242 N.W. 2d at 192. A drawn weapon may constitute "necessary measures for [the officer's] own protection" or a "necessary use of force to compel the person to acquiesce in the nonarrest investigative detention." *Id.* at 725, 242 N.W.2d at 191–92. An investigative stop is not necessarily transformed into an arrest by the officers drawing their guns and blocking the front of the suspect's car with a patrol car. *Id.* at 725, 242 N.W.2d at 192.

The tactics used to stop defendant's car were not unreasonable under the circumstances. The officers were stopping an unknown number of burglary suspects, in a high-crime area, in the early morning when few other people were present. Using four officers, drawing two guns, and even pointing one of the guns at defendant's car was not an excessive show of force sufficient to convert the investigative stop into a full-scale arrest.

*Seizure of Watches*

If an officer making an investigatory stop has reason to believe the person stopped may be armed, the officer may conduct a limited pat-down search for weapons of the person's outer clothing. *Flynn*, 92 Wis. 2d at 433, 285 N.W.2d 712. The search must be limited to that which is necessary to discover weapons which might be used to harm the officer or others nearby. *Terry*, 392

U.S. at 26. The pat-down for weapons is an exception to the general rule that warrantless searches are *per se* unreasonable, and therefore the burden of showing that the officer's conduct met fourth amendment requirements falls on the state. *Bies v. State,* 76 Wis. 2d 457, 463, 251 N.W.2d 461, 464 (1977).

The state did not meet its burden here. The factors which supported the means used to stop defendant also provided reasonable grounds to frisk him.[2] The state failed to show, however, that the pat-down was "strictly circumscribed" by the need to discover and remove any weapons defendant might be carrying. *See Terry,* 392 U.S. at 25–26. The officer said only that he felt three watches. He did not say where the watches were. He gave no details regarding the watches that would support a reasonable belief that defendant might have used them as weapons.

The state argues that the watches were properly seized under the "plain view" exception to the warrant requirement. That exception, however, includes an element that "[t]he item seized, in itself or in itself with facts known to the officer at the time of the seizure, provides probable cause to believe there is a connection between the evidence and criminal activity."[3] *Bies,* 76 Wis. 2d at 464, 251 N.W.2d at 464–65. The officer's testimony

---

[2] *See State v. Flynn,* 92 Wis. 2d at 435, 285 N.W.2d at 713, where the supreme court stated that a burglary was "certainly the type of offense" which would lead an officer of reasonable caution to believe that the suspect might be armed.

[3] The "plain view" exception also requires that the evidence seized be "in plain view of the discovering officer." *Bies v. State,* 76 Wis. 2d 457, 464, 251 N.W.2d 461, 464 (1977). The watches seized here were, strictly speaking, not in view because they were covered by defendant's clothing. The officer's testimony indicates, however, that he recognized them as watches when he felt them.

showed that he knew defendant might have committed a burglary and that he felt three watches. The evidence does not establish that the officer knew the burglary was of a jewelry store or that watches had been taken in the burglary. The officer's knowledge of defendant's possible involvement in a burglary, coupled with feeling the watches, was insufficient to provide probable cause to believe the watches were stolen. The watches were unlawfully removed from under defendant's clothing. They therefore are suppressible. *Wong Sun v. United States,* 371 U.S. 471, 484 (1963).

Defendant was arrested when the officers saw that the watches had tags from the jewelry store. Without the tags, the police had insufficient probable cause to arrest defendant for the burglary. His arrest therefore was unlawful, which would ordinarily deprive the trial court of personal jurisdiction over him. *See State ex rel. Furlong v. Waukesha County Court,* 47 Wis. 2d 515, 525–26, 177 N.W.2d 333, 339 (1970). The display case discovered in his car was the fruit of the unlawful arrest and also was suppressible. *Wong Sun, supra.*

### Inevitable Discovery

We do not, however, end our inquiry with the determination that defendant was unlawfully arrested and the evidence unlawfully seized. In *Nix v. Williams,* —— U.S. ——, 81 L. Ed. 2d 377, 387–88 (1984), the Supreme Court held: "If the prosecution can establish by a preponderance of the evidence that the information [sought to be suppressed] ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale has so little basis that the evidence should be received." The Court stated that excluding physical evidence which ultimately would have been discovered

adds nothing to the integrity or the fairness of a criminal trial. *Id.* at 389. It stated:

Fairness can be assured by placing the State and the accused in the same positions they would have been in had the impermissible conduct not taken place. However, if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police, there is no rational basis to keep that evidence from the jury in order to ensure the fairness of the trial proceedings. In that situation, the State has gained no advantage at trial and the defendant has suffered no prejudice. Indeed, suppression of the evidence would operate to undermine the adversary system by putting the State in a *worse* position than it would have occupied without any police misconduct.

*Id.* at 389–90.

Applying the principles set forth in *Nix* to the facts of this case, we hold that the display case and the watches, though unlawfully seized, need not be suppressed. Officer Bacon testified that the case was two feet long, filled with necklaces, and sitting on the rear seat of defendant's car. Officer Bozicevich, who had been at the jewelry store, testified that when he arrived at the scene of the arrest, he too observed "numerous" items of "property or evidence" inside the car.[4] It appears inevitable that the officers would have discovered the display case even if they had not seized the watches and arrested defendant. Mere inadvertence was apparently the only reason why the display case was observed *after* defendant was arrested rather than before.

---

[4] Defense counsel objected to Bozicevich specifically identifying what he saw. Counsel stated, "That's the stuff we want to suppress." Bozicevich and counsel could only have been referring to the display case and the necklaces, as no other evidence was seized from inside defendant's car.

Had the officers observed the display case first, the case plus Officer Bozicevich's knowledge that a jewelry store had been broken into would have provided probable cause to arrest defendant for the burglary of the store. Once defendant was arrested, the officers could have properly seized the display case. Further, once defendant was arrested, the officers would have searched him, either immediately or at the police station inventory search. This would have been a lawful search, as it would have been pursuant to the arrest, and would have uncovered the watches. It thus appears that lawful discovery of the watches also was inevitable. Suppressing the display case and watches would put the state in a worse position than it would have been in had the officers acted lawfully. We will not reverse the trial court's order denying defendant's motion to suppress the display case and the watches.

The Wisconsin Supreme Court has held that the trial court's personal jurisdiction over a criminal defendant is "dependent upon the defendant's physical presence before the court pursuant to a properly issued warrant, a lawful arrest or a voluntary appearance." *Walberg v. State,* 73 Wis. 2d 448, 457–58, 243 N.W.2d 190, 195 (1976) (footnote omitted).[5] *See also State ex rel. Furlong,* 47 Wis. 2d at 525–26, 177 N.W.2d at 339 (arrest without probable cause does not confer personal jurisdiction of defendant on court). The remedy for a meritorious challenge to personal jurisdiction based on these

---

[5] The United States Supreme Court has held that an illegal arrest presents no federal constitutional bar to a subsequent prosecution and no defense to a valid conviction. *See United States v. Crews,* 445 U.S. 463, 474 (1980). The Court stated in that case that the defendant himself was not a suppressible "fruit" of police misconduct, and reinstated his conviction. *Id.*

grounds is dismissal of the charges. *See State v. Monje,* 109 Wis. 2d 138, 147, 325 N.W.2d 695, 700 (1982).

Here, however, we have concluded that the police inevitably would have discovered the display case in defendant's car absent any misconduct on their part, and that the display case would have provided probable cause to arrest defendant for the burglary of the jewelry store. Since it appears that defendant inevitably would have been arrested lawfully in the absence of any police misconduct, we extend the rule of *Nix* to cover this situation and hold that the illegality of defendant's arrest does not compel dismissal of the charges.

*By the Court.*—Judgment affirmed.