STATE of Wisconsin, Plaintiff-Respondent,

v.

Thomas J. ANKER, Defendant-Appellant.

Court of Appeals

*No. 2014AP353–CR. Submitted on briefs September 2, 2014.*
*—Decided September 16, 2014.*

2014 WI App 107

(Also reported in 855 N.W.2d 483.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Rex R. Anderegg* of *Anderegg & Associates*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Sarah L. Burgundy*, assistant attorney general.

Before Hoover, P.J., Stark, J., and Thomas Cane, Reserve Judge.

¶ 1. CANE, J. Thomas Anker appeals a judgment of conviction for operating while intoxicated (sixth offense) and causing injury to another person by operation of a vehicle while intoxicated. After fleeing an accident, Anker was discovered by a conservation warden, James Horne, who ordered him to stop, placed him in handcuffs, told him he was under arrest, and escorted him to an unmarked vehicle. The circuit court found that Anker was arrested and that probable cause

supported the arrest. Anker argues Horne lacked probable cause to arrest, and the circuit court therefore erroneously denied his suppression motion.

¶ 2. The State does not defend the circuit court's decision on the ground that Anker's arrest was supported by probable cause, thereby conceding the issue. *See Charolais Breeding Ranches, Ltd. v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments deemed conceded). Instead, the State contends this case merely involves a temporary detention, or *Terry* stop, that was justified under the lower reasonable suspicion standard.[1]

¶ 3. We agree with the circuit court and Anker that under the totality of the circumstances, a reasonable person would believe that he or she was being placed under arrest by Horne. Accordingly, we conclude probable cause was the appropriate standard. Because the State concedes there was not probable cause for the arrest, we reverse the judgment of conviction.

¶ 4. However, the State contends the evidence gathered as a result of Anker's arrest need not be automatically suppressed. The State argues—albeit in cursory fashion—for application of the "independent source" and "inevitable discovery" doctrines, both of which render tainted evidence admissible within certain boundaries. Because we lack sufficient evidentiary facts to determine whether to apply the independent source or inevitable discovery doctrines, we remand to the circuit court for further proceedings.

## BACKGROUND

¶ 5. The charges stemmed from events that occurred on November 11, 2012. Anker filed a suppres-

---

[1] *See Terry v. Ohio*, 392 U.S. 1 (1968).

sion motion, asserting his arrest was not supported by probable cause. The circuit court held an evidentiary hearing, at which Horne appeared.

¶ 6. Horne testified he was on duty at his office in Shawano when he heard radio traffic about an injured person heading into the woods behind a nearby McDonalds. Horne decided to assist local law enforcement, patrolling the area in his unmarked Dodge pickup truck. He received a description of the individual and spotted a person in similar dress exit and reenter the woods just south of a Wal-Mart. Horne drove into the Wal-Mart parking lot and parked next to the building behind some vehicles. At some point, a citizen approached and told Horne he had witnessed an accident nearby and saw a person involved run into the woods toward Wal-Mart.

¶ 7. After the witness left, Horne saw the suspect —later identified as Anker—come out of the woods. Horne testified Anker "looked up both edges of the woods, walked out calmly to the grass next to the parking lot, and started to walk . . . away from my location." Anker was wearing a white T-shirt, had no shoes, and was bleeding from the head. Horne's uncontroverted testimony was that Anker did not see Horne initially.

¶ 8. Horne got out of his truck, walked up behind Anker, and asked Anker to stop. Anker turned around and "walked a little faster[,]" but did not run away. Horne then told Anker he was under arrest and ordered him to stop. Horne further testified:

> He [Anker] kind of wondered why. In the meantime, I said, put your hands behind your back. And I put the handcuffs on him quickly. As I got one cuff on, he

571

started to come around, so I grabbed the other arm and cuffed him. I said, let's just wait for the officers to arrive.

Horne took Anker back to his truck and called dispatch to inform them he had the suspect in custody. He asked Anker "why he was bleeding and running around in the woods without his shoes on a cold November day." Anker responded that he fell down in the woods. Horne testified Anker appeared intoxicated.

¶ 9. The circuit court denied Anker's suppression motion. It determined that although Horne's subjective intent was to temporarily detain Anker until police arrived, his words and actions resulted in an arrest. However, the court concluded the arrest was supported by probable cause. Anker then pleaded no contest and was sentenced to three years' initial confinement and three years' extended supervision. He now appeals, challenging the denial of his suppression motion.

## DISCUSSION

██ ██

¶ 10. When reviewing a motion to suppress, this court employs a two-step analysis.[2] *State v. Dubose*, 2005 WI 126, ¶ 16, 285 Wis. 2d 143, 699 N.W.2d 582. We review a circuit court's findings of facts under the clearly erroneous standard, *State v. Smiter*, 2011 WI App 15, ¶ 9, 331 Wis. 2d 431, 793 N.W.2d 920 (WI App

---

[2] Normally, a no contest plea waives all nonjurisdictional defects and defenses. *See State v. Smiter*, 2011 WI App 15, ¶ 9, 331 Wis. 2d 431, 793 N.W.2d 920 (WI App 2010). However, Wis. Stat. § 971.31(10) carves out an exception to this rule and permits appellate review of an order denying a motion to suppress evidence.

All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

2010), with the court acting as the ultimate arbiter of witness credibility, *Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 644, 340 N.W.2d 575 (Ct. App. 1983). We review the circuit court's application of constitutional principles to the historical facts de novo. *Smiter*, 331 Wis. 2d 431, ¶ 9.

■

¶ 11. Wisconsin's citizens are protected against unreasonable seizures by both the Fourth Amendment to the United States Constitution and article I, section eleven of the Wisconsin Constitution. *See id.*, ¶ 10. These provisions "safeguard individuals' privacy and security against arbitrary governmental invasions, which requires striking a balance between the intrusion on an individual's privacy and the government's promotion of its legitimate interests." *State v. Sykes*, 2005 WI 48, ¶ 13, 279 Wis. 2d 742, 695 N.W.2d 277.

■

¶ 12. One way these provisions safeguard against governmental intrusion is by requiring probable cause to arrest. *State v. Paszek*, 50 Wis. 2d 619, 624, 184 N.W.2d 836 (1971). "Probable cause to arrest refers to that quantum of evidence which would lead a reasonable police officer to believe that the defendant probably committed a crime." *Id.* Probable cause is to be judged by the totality of the circumstances within the officer's knowledge at the time of arrest, *Sykes*, 279 Wis. 2d 742, ¶ 18, and on a case-by-case basis, *see Paszek*, 50 Wis. 2d at 625.

¶ 13. Here, Anker argues his arrest was not supported by probable cause. The State does not directly respond to his argument, and therefore concedes the issue. *See Charolais Breeding Ranches*, 90 Wis. 2d at 109. We will not abandon our neutrality to develop arguments for the parties, so we take the State's failure

to brief the issue as a tacit admission that there was no probable cause for Anker's arrest. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶ 25, 318 Wis. 2d 148, 769 N.W.2d 82.

¶ 14. Instead, the State argues Anker was not arrested at all during his encounter with Horne. The State views the encounter as a *Terry* stop, which "usually involves only temporary questioning and thus constitutes only a minor infringement on personal liberty." *State v. Young*, 2006 WI 98, ¶ 20, 294 Wis. 2d 1, 717 N.W.2d 729. The standard for determining whether a person was lawfully seized for investigatory purposes is whether "police have reasonable suspicion that a crime has been committed, is being committed, or is about to be committed." *Id.* In other words, a *Terry* stop is justified by less than probable cause.

¶ 15. Thus, the critical issue in this case is whether Anker was arrested or merely subjected to a brief investigative detention.[3] Admittedly, "the distinction between an arrest and an investigatory stop is not of easy delineation." *Wendricks v. State*, 72 Wis. 2d 717, 723, 242 N.W.2d 187 (1976). Factual context is critical. *Id.* at 723–24. "The standard used to determine the moment of arrest is whether a reasonable person in the defendant's position would have considered himself or herself to be 'in custody,' given the degree of restraint

___

[3] Before the circuit court, the State asserted that whether Anker was arrested or merely detained was "a matter of semantics." The State's "semantics" argument flies in the face of decades of constitutional law. We are troubled by the State's casual dismissal of individual rights.

under the circumstances." *State v. Kiekhefer*, 212 Wis. 2d 460, 485, 569 N.W.2d 316 (Ct. App. 1997).[4]

[4] This is also the standard used to determine whether a person is "in custody" for Fifth Amendment purposes. In *State v. Swanson*, 164 Wis. 2d 437, 446–47, 475 N.W.2d 148 (1991), *abrogated on other grounds by State v. Sykes*, 2005 WI 48, 279 Wis. 2d 742, 695 N.W.2d 277, our supreme court abandoned the subjective test it had previously used to determine whether a Fourth Amendment "arrest" had occurred and supplanted it with the Fifth Amendment custodial test.

However, subsequent cases have made clear that the two analyses focus on different facets of the police/suspect interaction. *See State v. Martin*, 2012 WI 96, ¶ 76, 343 Wis. 2d 278, 816 N.W.2d 270 (Abrahamson, C.J., concurring) ("The Fourth Amendment 'arrest' standard and the Fifth Amendment 'in custody' standard are related, but not identical."); *State v. Morgan*, 2002 WI App 124, ¶ 13, 254 Wis. 2d 602, 648 N.W.2d 23 (Fourth Amendment focuses on the reasonableness of the police officer's conduct, while Fifth Amendment focuses on whether, regardless of the reasonableness of the officer's conduct, the facts gave rise to a custodial situation). Thus, a person may not be "under arrest" for Fourth Amendment purposes, yet "in custody" for Fifth Amendment purposes.

This is an important distinction, *see Martin*, 343 Wis. 2d 278, ¶ 77 (Abrahamson, C.J., concurring) ("Going forward, this court should be cautious to avoid conflating closely related constitutional standards and analyses."), but one the State ultimately fails to make. The State argues the seven factors enunciated in *State v. Gruen*, 218 Wis. 2d 581, 594–96, 582 N.W.2d 728 (Ct. App. 1998), counsel against a finding of arrest in this case. However, as *Morgan* made clear, *Gruen* was a Fifth Amendment case, and its factors are directed to that inquiry. *Morgan*, 254 Wis. 2d 602, ¶ 16. As an example, the factor assessing "whether the questioning took place in a police vehicle" is obviously not directed at arrest, which can take place in the absence of police interrogation. *See Gruen*, 218 Wis. 2d at 595. In any event, even if we assumed the *Gruen* factors were applicable, we disagree those factors counsel against a finding of arrest for the reasons we discuss later in this opinion.

Finally, a brief note about the standard of review. Although pre-*Swanson* cases suggest the questions of whether and when

¶ 16.　Here, the circuit court determined Anker was arrested during the initial moments of his encounter with Horne. That conclusion is unassailably correct. Anker was ordered to stop, told he was under arrest, forcibly handcuffed, and taken to Horne's vehicle to be given over to investigating authorities.[5] There was no ambiguity in the situation; a reasonable person in those circumstances would consider himself or herself under arrest. The arrest was unreasonable in the absence of probable cause.

¶ 17.　An arrest is " 'inevitably accompanied by future interference with the individual's freedom of movement, whether or not trial or conviction ultimately follows.' " *Jones v. State*, 70 Wis. 2d 62, 68, 233 N.W.2d 441 (1975) (quoting *State v. Beaty*, 57 Wis. 2d

an arrest took place are ones of fact, *see Wendricks v. State*, 72 Wis. 2d 717, 723–24, 242 N.W.2d 187 (1976), we view *Swanson* as also revising the standard of review to a mixed question of fact and law, with the ultimate determination that an arrest was made subject to de novo review, *see State v. Carroll*, 2008 WI App 161, ¶ 25, 314 Wis. 2d 690, 762 N.W.2d 404, *aff'd*, 2010 WI 8, 322 Wis. 2d 299, 778 N.W.2d 1.

[5] We observe that Horne informed dispatch he had a suspect "in custody." Under *Swanson*, the subjective intent of the officer no longer has any bearing on the arrest inquiry. *See also Tebbens v. Mushol*, 692 F.3d 807 (7th Cir. 2012) (subjective intent of officer and suspect are irrelevant to inquiry into the nature of the detention). Consequently, the circuit court properly found there had been an arrest despite also finding that Horne did not subjectively intend to arrest Anker.

However, to the extent the spoken words of the officer would affect a reasonable person's understanding of the situation, those words are still relevant to the inquiry. Because it is not clear from this record whether Anker heard Horne's statement to dispatch—Anker testified only that Horne's testimony about his arrest was "[f]or the most part accurate"—we do not factor Horne's statement in our calculus.

531, 537, 205 N.W.2d 11 (1973)). A reasonable person under the circumstances would not believe his or her detention was only temporary. Under similar facts in *Young*, 294 Wis. 2d 1, ¶¶ 24–25, our supreme court determined the defendant was arrested when he was "physically detained and handcuffed" following a scuffle because the action "clearly restrained Young's liberty, led to a custodial arrest, and culminated in prosecution." *See also Terry*, 392 U.S. at 16 (An arrest in the traditional sense involves a detention that eventuates in a "trip to the station house and prosecution for crime.").

¶ 18. The State weakly responds by deconstructing the totality of the circumstances and attacking each individual fact suggesting an arrest. Stripping each fact of context and then dismissing it as if it were the sole fact suggesting an arrest had taken place is neither analytically honest nor persuasive. *See State v. Marten-Hoye*, 2008 WI App 19, ¶ 27, 307 Wis. 2d 671, 746 N.W.2d 498 ("[E]ach case focuses on the totality of the circumstances . . . to determine whether a reasonable person in the defendant's position would have believed he or she was under arrest."). Nonetheless, the inevitable conclusion is that Anker was arrested even using the State's piecemeal approach.

¶ 19. The State argues Horne's statement that Anker was "under arrest" was simply a "show of authority" to compel Anker to stop, and notes that far more egregious uses of force have been found to be consistent with a *Terry* stop. *See Jones*, 70 Wis. 2d at 70 ("The fact that a weapon was drawn by the officer does not transform the act into arrest."). However, the State later undermines its argument by conceding Horne used an "inaccurate word" in telling Anker he was

"under arrest." Horne's words cannot be so easily dismissed as misstatement. A law enforcement officer's statements are a critical factor in assessing how a reasonable person would view the encounter. *See Marten-Hoye*, 307 Wis. 2d 671, ¶ 28 (concluding officer's statement that defendant was under arrest was equivocal in light of other comments suggesting defendant would be issued a citation and then released).

██ ██

¶ 20. Next, the State correctly points out that the use of handcuffs "does not necessarily transform a *Terry* stop into an arrest." *See State v. Vorburger*, 2002 WI 105, ¶ 64, 255 Wis. 2d 537, 648 N.W.2d 829. However, the State does not dispute that handcuffs are a key fact strongly suggesting to a reasonable person that he or she has been arrested in the absence of other circumstances justifying their use. *See Marten-Hoye*, 307 Wis. 2d 671, ¶ 29.

¶ 21. Finally, the State argues Horne's "taking Anker back to his truck, alerting dispatch, and waiting for police to arrive to conduct further investigation" was consistent with a *Terry* stop because it was reasonable to prevent Anker from leaving the scene. This brings us to the State's primary argument—that Horne's actions were necessary to "freeze the situation" until Shawano law enforcement arrived.

¶ 22. The State portrays Anker as trying to flee Horne. The record simply does not bear this out. Horne testified he exited his unmarked vehicle, walked up behind Anker, and said, "sir, could you stop." Horne testified Anker looked at him and "picked up speed a little bit[.]" However, at no time did Horne characterize Anker as trying to flee. In fact, Horne acknowledged Anker was walking, not running, and stopped immediately when Horne told him he was under arrest.

¶ 23. Further, the State fails to explain why Anker should have felt compelled to respond to Horne or comply with his requests before Horne displayed handcuffs and told Anker he was under arrest. There is nothing in the record establishing that Horne was uniformed at the time of the encounter, nor is there any evidence Horne was armed or wearing a badge.[6] Horne's vehicle was an unmarked Dodge pickup truck that Horne conceded "kind of blends in."

¶ 24. Wisconsin's codification of *Terry*, WIS. STAT. § 968.24, permits a law enforcement officer to stop a person for a reasonable period of time based on reasonable suspicion "[a]fter having identified himself or herself as a law enforcement officer." Not only does the State fail to cite this statute, its argument directly contravenes it. Nothing in the record establishes that Horne identified himself as a law enforcement officer before telling Anker he was under arrest, nor do the facts in any way suggest Anker would have had prior notice Horne was a law enforcement officer. The State's argument that the encounter was a valid *Terry* stop is without record support and contravenes state law.

¶ 25. The State argues that even if we agree with Anker, we should not automatically conclude his suppression motion must be granted. In a cursory argument, without any record or legal citations to support it, the State contends all evidence gathered subsequent

---

[6] Before the circuit court, the State simply assumed these facts:

> Now, I'm assuming Warden Horne was wearing his DNR uniform, because when he's on duty, I've not seen him where he's not wearing one. So he . . . would have been readily identifiable as an officer or as a warden. In any event, badge, gun, all of that, squad, the truck.

to Anker's arrest was independent of the arrest and would have been discovered anyway. We perceive the State to be invoking two related but distinct doctrines: the independent source doctrine and the inevitable discovery doctrine. *See Murray v. United States*, 487 U.S. 533, 539 (1988) ("The inevitable discovery doctrine, with its distinct requirements, is in reality an extrapolation from the independent source doctrine."). Tainted evidence may be admissible through the independent source doctrine if the State can show it was also obtained by independent, lawful means. *Id.* at 538–39. Such evidence may also be admitted through the inevitable discovery doctrine, which holds that evidence need not be suppressed if the State can prove the "tainted fruits inevitably would have been discovered by lawful means." *See State v. Schwegler*, 170 Wis. 2d 487, 499, 490 N.W.2d 292 (Ct. App. 1992).

¶ 26. As far as we can tell, the State's arguments for saving the tainted evidence were not presented to the circuit court, so the court never had the opportunity to make factual findings. The State simply wishes for us to assume all the evidence it would have introduced at trial is admissible, despite never identifying that evidence in its brief nor explaining why the evidence was also lawfully obtained or would have been discovered in the absence of Anker's arrest.

¶ 27. The circuit court is the proper place to make these arguments. We are not a fact-finding court. *See Lang v. Lowe*, 2012 WI App 94, ¶ 16, 344 Wis. 2d 49, 820 N.W.2d 494, *review denied*, 2013 WI 6, 345 Wis. 2d 402, 827 N.W.2d 96. We therefore remand to the circuit court so that it may hold a hearing on the State's arguments, taking evidence and making factual findings as it deems appropriate. Upon remand, the circuit

court may also hold any additional proceedings it deems necessary. If the court concludes neither the independent source nor the inevitable discovery doctrines apply, it shall grant Anker's suppression motion.

*By the Court.*—Judgment reversed and cause remanded with directions.