COURT OF APPEALS
DECISION
DATED AND FILED

June 11, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.  **2023AP2085-FT**

Cir. Ct. No. **2023ME13**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

IN THE MATTER OF THE MENTAL COMMITMENT OF B. T. C.:

ST. CROIX COUNTY,

   PETITIONER-RESPONDENT,

 V.

B. T. C.,

   RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for St. Croix County: R. MICHAEL WATERMAN, Judge. *Reversed.*

¶1    HRUZ, J.[1]  Bob[2] appeals an order for his involuntary commitment pursuant to WIS. STAT. § 51.20 and an order for his involuntary medication and treatment pursuant to WIS. STAT. § 51.61(1)(g).  Bob argues that St. Croix County failed to prove that he is dangerous under § 51.20(1)(a)2.b.  Specifically, Bob contends that the basis for the County's claim of dangerousness—namely, Bob's statement that he was going "to bring the [police] chief to justice"—is too vague to support a finding of dangerousness.

¶2    We agree with Bob that, absent contextualizing information in the record indicating threatening behavior, this statement—alone—is insufficient to support a finding of dangerousness under WIS. STAT. § 51.20(1)(a)2.b. Accordingly, we reverse.[3]

## BACKGROUND

¶3    Bob was taken into criminal custody in February 2023 after allegedly making a threatening statement against a peace officer—namely, that he was going to "bring the [police] chief to justice."  While Bob was in jail, staff became concerned about his mental state and called a crisis co-responder on two separate occasions—both of which resulted in a crisis assessment being performed.  After

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22).  This is an expedited appeal under WIS. STAT RULE 809.17 (2021-22).  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2]  For ease of reading, we refer to the appellant in this matter using a pseudonym, rather than his initials.

[3]  Bob does not separately challenge the order for involuntary medication and treatment. However, an order for involuntary medication and treatment is only effective during the term of a lawful commitment. *See* WIS. STAT. § 51.61(1)(g)3.  Our reversal of the commitment order in this case therefore requires us to reverse the involuntary medication and treatment order as well.

the first assessment, Bob was placed on suicide watch.[4]  During the second assessment, Bob was reportedly unable to regulate his emotions, and he informed the case manager performing the assessment, Nathan Cundiff, that he still wanted to bring the police chief to justice.  Bob was subsequently emergently detained.

¶4      Following a hearing, the circuit court found that there was probable cause to believe that Bob was mentally ill, a proper subject for treatment, and dangerous to himself or others.  The court then scheduled a final hearing and appointed a psychiatrist, Jeffrey Marcus, and a psychologist, Michael Lace, to examine Bob.  At the final hearing, the County called as witnesses Cundiff, Marcus, and inpatient consulting psychiatrist, Dr. John Bartholow.

¶5      Cundiff testified to the facts set forth above.  *See supra* ¶3.  Cundiff also stated that it is "normal for plenty of people to be upset when they're in jail" and that "bringing someone to justice" is a "vague statement" that "can mean a lot of different things."

¶6      Doctor Marcus testified that he examined Bob and opined that Bob suffered from an unspecified psychotic disorder.  Marcus stated that he did not hear Bob make a specific homicidal threat, that Bob did not make suicidal statements during the evaluation, and that Bob denied having homicidal intentions.  However, Marcus opined that Bob posed a danger to himself or others due to Bob's "threat of harm to a police officer" and because "[t]here had been other incidents leading up to that.  I read a [c]riminal [c]omplaint which denoted several of these concerning

---

[4] The record is unclear as to what specific behavior caused Bob to be placed on suicide watch.

3

incidents, and I believe those are directly related to psychotic symptomatology." Marcus's report was admitted into evidence without objection.[5]

¶7 Doctor Bartholow opined that Bob was not competent to refuse medication because Bob was incapable of expressing an understanding of his medication or treatment and incapable of applying an understanding of his treatment or medication to his condition.

¶8 Bob's stepson testified on his behalf, speaking about Bob's good character as well as the struggles that Bob went through after Bob's wife—who was also Bob's "best friend"—recently passed away.

¶9 The circuit court found that there was clear and convincing evidence that Bob was mentally ill and that Bob was a proper subject for treatment.[6] The

---

[5] We pause to note that, similar to Dr. Marcus's testimony—and the testimony of all the other witnesses—Marcus's report was vague as to the context surrounding Bob's alleged threat. Marcus wrote in the report that:

> The subject became convinced that this police officer had broken laws and needed to be arrested. His paranoid beliefs reportedly escalated, to the point where he made more direct threats of violence, including to a stranger while waiting in line at a local pharmacy. He was eventually arrested and is now facing the criminal charge of Threat to a Law Enforcement Officer, which is a Class H Felony. According to the [c]riminal [c]omplaint, numerous incidents were detailed, dating back to November 2021, which revealed various concerning behaviors associated with paranoid beliefs. Of note was documentation that the subject possesses numerous firearms for the stated purpose of self-protection. The nature of the threatening behavior and acuity of his paranoid beliefs appeared to increase over the past several weeks.

The report did not elaborate on the alleged "more direct threats of violence" "to a stranger while waiting in line at a local pharmacy" or the "numerous incidents" "dating back to November 2021."

[6] On appeal, Bob does not contest that he is mentally ill and a proper subject for treatment.

court then found that Bob was dangerous under WIS. STAT. § 51.20(1)(a)2.b. due to the threat that Bob made to the police chief. Regarding the threat, the court stated:

> The actual testimony today in court was somewhat vague. There was testimony that [Bob] had made threats against police and specifically wanted to bring the chief to justice. But also in reviewing Dr. Marcus's report he expanded on what that meant in the section summarizing [Bob's] statements to Dr. Marcus. The doctor wrote in his report that [Bob] had said he was the target of harassment by police officials and he claimed that it interfered with his well-being.
>
> [Bob] stated that he believes he is persecuted. He believes that those acts of persecution are real and not psychotic in nature. He also endorsed a history of depression which led to other various life stressors, including his recent legal entanglement.
>
> Then Dr. Marcus continues on [p]age 5 relevant to the doctor's opinion about dangerousness, and there the doctor forms as the basis for his opinion the information that was relayed in the [c]riminal [c]omplaint, along with other secondary sources, which is proper subject matter for an expert opinion.

¶10    As stated, the circuit court noted that Dr. Marcus based his opinion of dangerousness on information in the criminal complaint and other secondary sources, and, "with that context, bringing the chief to justice takes on a whole different meaning, one that is much more dark and sinister, and one that I think would reasonably bring ordinary individuals to fear for their safety." The court then entered an order committing Bob for six months and an order for involuntary medication and treatment. Bob now appeals.[7]

---

[7] The commitment order and involuntary medication order have expired. Bob argues that his appeal of the commitment order and involuntary medication order is not moot due to an ongoing collateral consequence of the commitment order, specifically the firearm ban. *See **Marathon County v. D.K.***, 2020 WI 8, ¶25, 390 Wis. 2d 50, 937 N.W.2d 901. The County has not addressed this issue, and we therefore deem it conceded. *See **State v. Anker***, 2014 WI App 107, ¶13, 357 Wis. 2d 565, 855 N.W.2d 483.

## DISCUSSION

¶11　Bob argues that the County presented insufficient evidence to prove that he is dangerous under WIS. STAT. § 51.20(1)(a)2.b.  Specifically, Bob contends that the County failed to provide any context for his statement and that "all that is known is that at an unspecified time, in an unspecified context, Bob said he 'needed to bring the chief to justice.'"[8]

¶12　"In our review, we interpret and apply WIS. STAT. § 51.20." *Langlade County v. D.J.W.*, 2020 WI 41, ¶25, 391 Wis. 2d 231, 942 N.W.2d 277.  "[W]e will uphold a circuit court's findings of fact unless they are clearly erroneous.  A finding of fact is clearly erroneous if it is against the great weight and clear preponderance of the evidence." *Id.*, ¶24.  "Whether the facts satisfy the statutory standard is a question of law that we review de novo." *Waukesha County v. J.W.J.*, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783.

¶13　For a person to be involuntarily committed pursuant to WIS. STAT. ch. 51, a petitioner must prove by clear and convincing evidence that the subject individual is "(1) mentally ill; (2) a proper subject for treatment; and (3) dangerous to themselves or others." *D.J.W.*, 391 Wis. 2d 231, ¶29.  As relevant to this appeal,[9] dangerousness can be established by proving that the individual:

> [e]vidences a substantial probability of physical harm to other individuals as manifested by evidence of recent

---

[8] Bob also argues that the County "failed to present any witnesses who were personally threatened by Bob" to testify about whether they felt reasonably fearful as a result of Bob's statements.  However, we note that WIS. STAT. § 51.20(1)(a)2.b. is satisfied as long as "others are placed in a fearsome position by a disturbed person's actions even if the person placed in that position has no subjective awareness of it." *R.J. v. Winnebago County*, 146 Wis. 2d 516, 522-23, 431 N.W.2d 708 (Ct. App. 1988).

[9] WISCONSIN STAT. § 51.20(1)(a)2. provides five different standards of dangerousness.  Bob and the County agree that § 51.20(1)(a)2.b. is the only standard relevant to this appeal.

> homicidal or other violent behavior, or by evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them, *as evidenced by a recent* overt act, attempt or *threat to do serious physical harm*.

WIS. STAT. § 51.20(1)(a)2.b. (emphasis added). Importantly, "[s]ubstantial probability" means "much more likely than not." ***Marathon County v. D.K.***, 2020 WI 8, ¶35, 390 Wis. 2d 50, 937 N.W.2d 901 (citations omitted).

¶14 We agree with Bob that the record on appeal lacks sufficient context, detail, and competent evidence, such that Bob's sole allegedly threatening statement that he needed to "bring the chief to justice" does not make it much more likely than not that Bob will physically harm other individuals. The circuit court noted that the testimony provided at the final hearing regarding the alleged threat was "vague" and looked to Dr. Marcus's report to fill the void. Marcus's report largely relies on hearsay information from the criminal complaint regarding "numerous incidents … dating back to November 2021" and states that these incidents "revealed various concerning behaviors." At no point does Marcus specify what occurred during these incidents—or what concerning behaviors were revealed by the incidents—other than referring to the fact that details regarding these incidents are documented in the criminal complaint. The court then stated that, with the context provided by Marcus's report, Bob's statement has a "dark and sinister" meaning.

¶15 The criminal complaint, however, was never admitted into evidence at the final hearing. Further, the complaint was not otherwise provided to this court on appeal. Thus, given that neither Dr. Marcus nor the circuit court expounded on the events mentioned within the complaint, we are left with no context in which to evaluate Bob's statement in our de novo review of dangerousness. Bob argues—and we agree—that without any context, "bringing the chief to justice" can mean a

litany of different, non-threatening things such as "writing a scathing op[-]ed, orchestrating a negative social media campaign, speaking at a government meeting, or presenting evidence of wrongdoing to the proper officials."

¶16    Furthermore, there is nothing in the record to suggest that the information within the criminal complaint has been adjudicated as being true or accurate.  There is no reference to a trial having occurred, to Bob having been convicted in connection with the complaint, or to any type of evidentiary hearing involving the allegations in the complaint.  Accordingly, we question the propriety of relying on such allegations even had the complaint been properly included in the record.  Assuming, arguendo, that the incidents referenced in the complaint could provide context for Bob's statement, the County was required to provide competent evidence of these incidents at the final hearing so that Bob had an opportunity to dispute that evidence.  *See* WIS. STAT. § 51.20(5)(a).  At the final hearing, the County could have presented witnesses to these alleged incidents, but it failed to do so.

¶17    Despite the foregoing deficiencies, the County argues that, based on the totality of the circumstances, Bob's statement "bringing the chief to justice" was a threat and, impliedly, was a threat to do serious physical harm.[10]  We reject this argument.  As shown above*,* evidence of underlying circumstances necessary to contextualize Bob's statement was not provided on appeal, nor was evidence properly admitted to the circuit court at the final hearing.  Without this information, we, as a reviewing court, cannot assess the objective legal standard of whether the

---

[10]  The County does not provide any basis for this argument other than the mere statement itself.

8

"threat" constituted one that would put others in reasonable fear of both violent behavior toward them and serious physical harm to them. *See Portage County v. E.R.R.*, No. 2020AP870-FT, unpublished slip op. ¶¶19-21 (WI App Oct. 1, 2020)[11] (concluding that a patient's statement that he "felt like he wanted to snap people's necks" did not establish clear and convincing evidence of a substantial likelihood that the patient would cause harm due to a lack of supporting context, such as evidence that the patient would act on those feelings); *cf. R.J. v. Winnebago County*, 146 Wis. 2d 516, 522-23, 431 N.W.2d 708 (Ct. App. 1988) (concluding that the patient's threat reasonably placed others in reasonable fear of violent behavior when considering the context that the patient's threat was specific regarding the actions she wished to perform, the patient thought that her husband was having an affair with the subject of the threat, and the patient worked at the same location as the subject of the threat).

¶18     To the extent that the County means to argue that Dr. Marcus was permitted to base his expert opinion on secondary sources and the circuit court was permitted to rely on Marcus's opinion, we also reject that argument. While WIS. STAT. § 907.03 permits experts to base their testimony on secondary sources, the information relied upon by the expert is not "automatically admitted into evidence." *State v. Weber*, 174 Wis. 2d 98, 107, 496 N.W.2d 762 (Ct. App. 1993); *see also Kenosha County v. L.A.T.*, No. 2022AP1730, unpublished slip op. ¶17 (WI App. Aug. 23, 2023). As such, any reliance on the criminal complaint—or any other hearsay from Marcus's testimony and report—by the court would have been clearly

---

[11] Unpublished opinions authored by a single judge and issued on or after July 1, 2009, may be cited for their persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).

erroneous without those facts otherwise being properly introduced into evidence. *See* WIS. STAT. § 901.03(4).

*By the Court.*—Orders reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.