COURT OF APPEALS
DECISION
DATED AND FILED

March 19, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1976-CR**

Cir. Ct. No. **2023CT160**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

   V.

JEREMY A. SOBOTIK,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Waukesha County: J. ARTHUR MELVIN, III, Judge. *Affirmed*.

¶1      LAZAR, J.[1]   Jeremy A. Sobotik appeals the circuit court's judgment of conviction on the charge of operating a motor vehicle with a restricted

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

controlled substance, third offense. He contends that the court erred when it denied his motion to suppress evidence because the arresting officer's post-stop investigation was an extensive interrogation that violated his rights under the Wisconsin Constitution pursuant to *State v. Knapp*, 2005 WI 127, 285 Wis. 2d 86, 700 N.W.2d 899, and constituted an attempt to evade the warnings required under *Miranda v. Arizona*, 384 U.S. 436 (1966). This court concludes that the interrogation was neither excessive nor predicated upon an intention to violate Sobotik's constitutional rights and affirms.

## BACKGROUND

¶2 The facts were established at the evidentiary hearing at which former Village of Pewaukee Police Officer Matthew Bublitz testified. Sobotik claims he was distracted by his phone when he drove his pickup truck through a red light, striking another vehicle. He was the only person in his truck. Officer Bublitz was called to the scene; he wore a body camera that recorded the entire encounter.

¶3 When Bublitz first approached Sobotik, he noticed the odor of burnt marijuana on him. The odor of burnt and raw marijuana coming from the vehicle was stronger. Based upon those odors, Bublitz conducted a probable-cause search of the pickup truck and located a glass container[2] in Sobotik's fishing jacket which Bublitz believed to contain marijuana.

¶4 At that point, Bublitz began to ask questions to "determine Mr. Sobotik's level of impairment, if any, for OWI investigative purposes." These post-search questions, which took approximately three minutes in their entirety,

---

[2] The glass container had a label indicating it held cannabis purchased out of state.

were to clarify why there was an odor of marijuana on Sobotik and his clothing even though he had initially claimed not to have smoked for a couple of weeks. Bublitz was also aware that Sobotik had two prior OWI convictions. Following field sobriety tests, Bublitz arrested[3] Sobotik "for a restricted controlled substance violation."

¶5      Almost a year later, Sobotik was charged with Operating a Motor Vehicle with a Restricted Controlled Substance in Blood—Third Offense in violation of WIS. STAT. § 346.63(1)(am). Sobotik filed a motion to suppress based upon a violation of article I, section 8 of the Wisconsin Constitution. Following an evidentiary hearing at which Bublitz testified, the circuit court ordered supplemental briefs. The court subsequently issued an oral ruling with several findings of fact and concluded that because the encounter "was an investigation into the odor [of marijuana] that was emanating from the vehicle" and Sobotik was not arrested until the conclusion of that proper investigation, there was no violation of his constitutional rights. The court denied the motion to suppress.[4]

¶6      Sobotik appeals the judgment of conviction and seeks a remand with directions instructing the circuit court to grant the motion to suppress.

---

[3] Bublitz testified that his report stated he had arrested Sobotik "based on the odor of marijuana from the car, the possession of marijuana, and [Sobotik]'s admissions that he smoked marijuana approximately three hours ... prior to driving."

[4] Sobotik subsequently entered a no-contest plea, and the circuit court adjudicated him guilty and entered a judgment of conviction.

**STANDARD OF REVIEW**

¶7      The issue on appeal centers upon constitutional rights, and, as such, it is subject to a two-step process of review.  *State v. Moeser*, 2022 WI 76, ¶13, 405 Wis. 2d 1, 982 N.W.2d 45, *cert. denied sub nom. Moeser v. Wisconsin*, 143 S. Ct. 2612 (2023); *State v. Tullberg*, 2014 WI 134, ¶27, 359 Wis. 2d 421, 857 N.W.2d 120.  First, appellate courts "uphold a circuit court's findings of historic fact unless they are clearly erroneous."  *Moeser*, 405 Wis. 2d 1, ¶13 (citation omitted).  Second, we "independently apply constitutional principles to those facts."  *Id.* (citation omitted).

**DISCUSSION**

¶8      Both parties appear to agree—as they must—that police officers are allowed to question individuals during a traffic stop, especially one stemming from an automobile accident.  It is also well-established that "[t]raffic stops are meant to be brief interactions with law enforcement officers, and they may last no longer than required to address the circumstances that make them necessary."  *State v. Floyd*, 2017 WI 78, ¶21, 377 Wis. 2d 394, 898 N.W.2d 560.  There is, thus, a line after which a traffic stop extends into an impermissible interrogation with constitutional implications.  The investigation of Sobotik did not cross that line.

### I.  Pre-*Miranda* investigations are permitted during investigatory detentions or *Terry* stops.[5]

¶9      The short detention and communication with Sobotik after his accident was the equivalent of a **Terry** stop and accompanying permissible investigation.  As our supreme court stated in **State v. Young**, 2006 WI 98, ¶20, 294 Wis. 2d 1, 717 N.W.2d 729:

> [A]n investigatory or **Terry** stop[] usually involves only temporary questioning and thus constitutes only a minor infringement on personal liberty.  An investigatory stop is constitutional if the police have reasonable suspicion that a crime has been committed, is being committed, or is about to be committed.  **State v. Waldner**, 206 Wis. 2d 51, 56, 556 N.W.2d 681 (1996).  An investigatory stop, though a seizure, allows police officers to briefly "detain a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest."  **Id.** at 55.

(Footnotes omitted.)

¶10     "Generally speaking, an officer is on the proper side of the line so long as the incidents necessary to carry out the purpose of the traffic stop have not been completed, and the officer has not unnecessarily delayed the performance of those incidents."  **Floyd**, 377 Wis. 2d 394, ¶22; *see also* **Rodriguez v. United States**, 575 U.S. 348, 354 (2015) (traffic stop seizures should end when tasks related to the infraction are, or should be, completed); **State v. Malone**, 2004 WI 108, ¶26, 274 Wis. 2d 540, 683 N.W.2d 1.

---

[5] **Terry v. Ohio**, 392 U.S. 1 (1968).  Wisconsin has even codified **Terry** stops in WIS. STAT. § 968.24, which "permits a law enforcement officer to stop a person for a reasonable period of time based on reasonable suspicion '[a]fter having identified himself or herself as a law enforcement officer.'"  **State v. Anker**, 2014 WI App 107, ¶24, 357 Wis. 2d 565, 855 N.W.2d 483 (alteration in original; quoting § 968.24).

¶11 As the court in *State v. Anker*, 2014 WI App 107, ¶15, 357 Wis. 2d 565, 855 N.W.2d 483, explains:

> "[T]he distinction between an arrest and an investigatory stop is not of easy delineation." Factual context is critical. "The standard used to determine the moment of arrest is whether a reasonable person in the defendant's position would have considered himself or herself to be 'in custody,' given the degree of restraint under the circumstances."

(Citations omitted.)

¶12 The question here is whether that permissible pre-*Miranda* investigation ended—or should have ended—before Bublitz asked Sobotik questions regarding marijuana.

## II. The communications with Sobotik were neither excessive nor was there intent to violate *Miranda*.

¶13 First, the communications were not excessive. Bublitz asked Sobotik approximately five questions regarding marijuana after discovering the container in Sobotik's vehicle. Those questions were part and parcel of an effort by Bublitz to establish that he had enough probable cause to believe that Sobotik had marijuana in his system while he was operating a motor vehicle. Of those questions, two arguably strayed slightly from that purpose, but even those inquiries were sufficiently related to the probable cause investigation.[6] This court

---

[6] The inquiries of how frequently Sobotik smoked marijuana and whether the amount he had smoked that particular day was "normal" for him are not necessarily tethered to the issue of whether Sobotik was operating while under the influence of a controlled substance. The other questions, however, absolutely were relevant to Bublitz's investigation: (1) how much marijuana Sobotik had smoked that day, (2) whether he "felt high at the moment," and (3) how much time had elapsed between smoking marijuana and driving.

is hard-pressed to understand how Sobotik can assert that five questions over a three minute interval can be considered "excessive."

¶14 Second, there was no deliberate effort to avoid *Mirandizing* Sobotik; Bublitz was properly conducting an investigation. Bublitz testified these were "standard questions that [officers] ask on any OWI investigation, whether it be due to controlled substances or alcohol." Bublitz further testified that he continued to ask questions after he found the container of marijuana because he still wanted to ascertain how recently Sobotik had smoked before driving and causing the accident.

¶15 Therefore, Sobotik's reliance upon *Knapp* is misplaced. That opinion centered upon a "deliberate" violation of *Miranda*. The State in *Knapp* "conceded that the physical evidence was seized as a direct result of an intentional *Miranda* violation." *Knapp*, 285 Wis. 2d 86, ¶20. *Knapp* stands for the proposition that courts "will not tolerate the police deliberately ignoring *Miranda*'s rule as a means of obtaining inculpatory physical evidence." *Knapp*, 285 Wis. 2d 86, ¶72. The law enforcement officer's conduct in *Knapp* was "particularly repugnant"; the officer "intentionally [took] unwarranted investigatory shortcuts to obtain [a] conviction[]." *Id.*, ¶¶75, 81. Our supreme court was very concerned that the judicial process would be corrupted and opined that "[t]o guard against [that] danger, fair play requires the players to play by the rules, especially those players who enforce the rules." *Id.*, ¶81.

¶16 Here, there is no concession of such a deliberate intent to violate Sobotik's constitutional rights. Sobotik points to questions he alleges were "designed to elicit an incriminating response" to establish that an interrogation took place per *United States v. Briggs*, 273 F.3d 737, 740 (7th Cir. 2001). That

constitutes an incorrect view of both the questions and the investigation. The questions were not designed to make Sobotik incriminate himself for use or possession of marijuana. The scope of Bublitz's questions were reasonably related to the justification for the detention: they were asked to help Bublitz ascertain whether there was probable cause to believe Sobotik was under the influence of a restricted controlled substance *while* he was operating a vehicle and whether field sobriety tests were appropriate. In other words, they were part of a reasonable investigation at the accident scene.

¶17 Bublitz did not intentionally avoid providing *Miranda* warnings to Sobotik. Bublitz was not taking investigatory shortcuts to obtain a conviction. He was conducting a proper post-accident investigation allowed by *Terry*, *Young*, and *Anker*. He was playing by the rules.

**CONCLUSION**

¶18 The investigation and questioning of Sobotik was not excessive, nor was it an attempt—intentional or otherwise—to avoid the dictates of and safety afforded by *Miranda*. Sobotik's constitutional rights were not violated and the circuit court properly denied Sobotik's motion to suppress.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.