COURT OF APPEALS
DECISION
DATED AND FILED

June 11, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.**  *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2024AP2629-CR**

STATE OF WISCONSIN

Cir. Ct. No.  **2023CT69**

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

TIMOTHY J. PETRIE,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Calumet County: JEFFREY S. FROEHLICH, Judge.  *Reversed and cause remanded*.

¶1    GROGAN, J.[1]   Timothy J. Petrie appeals from a judgment entered after he pled no contest to operating a motor vehicle while under the influence

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2023-24).  All references to the Wisconsin Statutes are to the 2023-24 version.

(OWI), second offense, contrary to WIS. STAT. § 346.63(1)(a). Petrie contends the circuit court erroneously exercised its discretion when it denied his suppression motion and specifically claims that because the police officer lacked probable cause to perform a preliminary breath test (PBT), all evidence gathered following the PBT must be suppressed under the fruit of the poisonous tree doctrine. The State concedes that the PBT was unlawful but insists the arrest was lawful under the independent source doctrine. Petrie contends it is improper to apply the independent source doctrine because no testimony was taken in the circuit court and the court made findings based only on the facts alleged in the Complaint.[2] This court reverses and remands for an evidentiary hearing on Petrie's suppression motion.[3]

## I. BACKGROUND

¶2      The Complaint alleges the following facts. At about 3:00 a.m. on April 22, 2023, City of New Holstein Police Officer Emily Kramp received a complaint that a vehicle had collided with a parked car and fled—"possibly heading in the direction of Puritan Road." Kramp located a vehicle parked on

---

[2] To the extent Petrie contends he had the right to confrontation at the suppression hearing, he is incorrect. *See State v. Zamzow*, 2017 WI 29, ¶24, 374 Wis. 2d 220, 892 N.W.2d 637 ("[T]he Confrontation Clause does not apply during suppression hearings.").

[3] This court emphasizes that it is the State's burden at suppression hearings to prove the police officer acted lawfully and constitutionally. *See, e.g.*, *State v. Blatterman*, 2015 WI 46, ¶17, 362 Wis. 2d 138, 864 N.W.2d 26 ("the State bears the burden of proving that the seizure complied with the Fourth Amendment and Article I, Section 11" of the Wisconsin Constitution); *State v. Wille*, 185 Wis. 2d 673, 682, 518 N.W.2d 325 (Ct. App. 1994) ("the State's burden of persuasion at a suppression hearing is significantly greater than … at a refusal hearing"). It must do so by presenting *evidence*—typically sworn testimony from the police officer—upon which the circuit court makes findings of fact. Unless the defendant stipulates to the facts in the Complaint, those facts are not evidence. They are allegations that must be proven in an evidentiary hearing or trial.

Puritan Road with substantial damage to the front end, and per the Complaint, "[t]he vehicle's front tires were on the edge of the curb and the vehicle had its flashers on and was still running." Kramp observed the driver, identified as Petrie, get out of the driver's seat and start walking toward her, at which time she also noticed Petrie's nose was bleeding and asked "if he needed medical attention[.]" Petrie said he was fine and explained to Kramp that he had fallen asleep at the wheel, struck the parked car, and apologized. When Kramp asked why Petrie left the scene of the accident, Petrie responded that "he just wanted to get off the street and come home."

¶3　　Kramp asked Petrie if he would submit to a PBT, and Petrie agreed. While Kramp was explaining how to perform the PBT, Petrie admitted he had been drinking between 5:00 p.m. and 11:00 p.m., but he was unsure of how many drinks he had. Kramp asked Petrie again whether he was still willing to perform the PBT. According to Kramp, Petrie said "he knew he was above the legal limit and that he was upset at himself and was willing to do whatever [s]he needed him to do." Kramp asked a final time whether Petrie would perform the PBT, Petrie said yes, and the PBT showed a breath alcohol concentration of .072.

¶4　　While administering the PBT, Kramp noticed—presumably for the first time—the odor of alcohol on Petrie, and she then asked Petrie if he would be willing to submit to field sobriety tests (FSTs). Petrie agreed. Kramp first administered the Horizontal Gaze Nystagmus test (HGN), which apparently showed clues of impairment. Per the Complaint: (1) Petrie's eyes showed "lack of smooth pursuit, which was present in both eyes"; (2) "distinct and sustained nystagmus at maximum deviation, which was present in both eyes"; and (3) "onset of nystagmus prior to 45- degrees, which was also present in both eyes."

¶5      Kramp next attempted to conduct the Walk-and-Turn test; however, Petrie was unable to complete the test and refused to complete additional tests, "stating that he knows he will fail them." Petrie then identified what he had been drinking and indicated he had six or seven drinks in total. When Kramp asked whether Petrie thought the drinking caused him to hit the parked car, Petrie answered affirmatively but also told Kramp "that he works many hours and fell asleep behind the wheel."

¶6      After Kramp read Petrie the Informing the Accused form, Petrie consented to a blood test, which showed a blood alcohol concentration of .146. The State charged Petrie with operating a motor vehicle while under the influence, second offense, and operating with a prohibited alcohol concentration, second offense. *See* WIS. STAT. § 346.63(1)(a) and (b).

¶7      Petrie filed a motion seeking to suppress evidence on the ground that Kramp lacked probable cause to conduct a PBT. In addition to asserting in his motion that the PBT results must be suppressed, Petrie also argued that any evidence obtained subsequent to the PBT must likewise be suppressed.[4] The State

---

[4] In its Response brief, the State argues that Petrie framed his suppression motion as involving a "narrow issue"—specifically, that the only issue Petrie raised was in regard to whether there was probable cause for Kramp to administer the PBT. As noted, however, Petrie's motion asserted that more than just the PBT results must be suppressed, and the State's argument on this point is therefore entirely unavailing.

Moreover, this court further notes that in asserting this argument, the State not only references but directly quotes from a transcript of an April 23, 2024 motion hearing the State included in its Appendix. That transcript, however, was not made part of the appellate Record, and this court therefore will not consider it. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("An appellate court's review is confined to those parts of the record made available to it."); *see also Roy v. St. Luke's Med. Ctr.*, 2007 WI App 218, ¶10 n.1, 305 Wis. 2d 658, 741 N.W.2d 256. In addition to citing to documents not included in the appellate Record, counsel also failed to comply with WIS. STAT. RULE 809.19(8)(bm), as noted in Petrie's Reply. Counsel is directed to comply with the rules of appellate procedure in future matters.

did not file a brief in response to the motion but conceded at the hearing that Kramp did not have probable cause to request the PBT. However, the State argued that, setting the PBT aside, Kramp still had reasonable suspicion to conduct the FSTs, which led to probable cause to arrest Petrie for OWI-second.

¶8 Neither Kramp nor any other witness was called to testify at the hearing. Instead, the circuit court engaged in a discussion with the attorneys. Petrie's counsel insisted that all evidence gathered after the unlawful PBT should be suppressed because the PBT was an unlawful search. The State, to the contrary, argued that because Kramp had reasonable suspicion to conduct the FSTs and probable cause to arrest, the evidence following the PBT did not need to be suppressed and that the court could simply set aside the PBT evidence. During the discussion, defense counsel also said: "I would concede that there was reasonable suspicion to do the field sobriety tests[.]" Defense counsel believed that the reasonable suspicion to do the FSTs did not matter, however, because "those were all subsequent to" the unlawful PBT. The court set aside the PBT evidence but denied the suppression motion after making a number of factual findings that appear to be based solely on the allegations in the Complaint.[5]

¶9 Specifically, the circuit court found the following facts supported probable cause to arrest Petrie for OWI: (1) "the time of night"—it was approximately 3:00 a.m. in the morning; (2) Petrie's statements; (3) Kramp's

---

[5] It is unclear from the Record whether the circuit court's findings were based on defense counsel's concession that the police officer had reasonable suspicion to conduct the FSTs, which could possibly be construed as a stipulation to some of the facts alleged in the Complaint. The court, however, did not address the defense's concession or even mention reasonable suspicion to conduct the FSTs at all in its decision. Instead, it simply made findings of fact regarding probable cause to arrest that appear to be based solely on the Complaint.

"observations on the HGN test"; (4) Petrie's refusal to perform other FST's; (5) Petrie "staggering all over and failing other tests"; and (6) Petrie left the scene of the accident "which would evidence some consciousness of guilt." Petrie appeals.

## II. DISCUSSION

¶10    On appeal, Petrie argues the circuit court erroneously exercised its discretion when it denied his suppression motion. "[A]n order granting or denying a motion to suppress evidence" presents "a question of constitutional fact, which requires a two-step analysis" on appellate review. *State v. Asboth*, 2017 WI 76, ¶10, 376 Wis. 2d 644, 898 N.W.2d 541. "First, we review the circuit court's findings of historical fact under a deferential standard, upholding them unless they are clearly erroneous. Second, we independently apply constitutional principles to those facts." *State v. Robinson*, 2010 WI 80, ¶22, 327 Wis. 2d 302, 786 N.W.2d 463 (internal citations omitted).

¶11    Petrie makes two arguments on appeal. First, he repeats the argument he made below—that the undisputedly unlawful PBT required the circuit court to suppress all the OWI evidence following the PBT. Second, he argues he had the right to confrontation at the suppression hearing and that the circuit court erred in making findings of fact based solely on the unproven allegations in the Complaint.

¶12    Because the circuit court failed to hold an evidentiary hearing, the Record is insufficient for this court to analyze whether the unlawful PBT requires suppression of the evidence obtained following its administration. Whether the police officer had an independent source to support reasonable suspicion to conduct further tests and/or probable cause to arrest—without the information

obtained from the PBT—was never developed below because the police officer did not testify at the suppression hearing.[6] For example, it is unclear if Petrie's admission about drinking earlier that night was obtained *while* Kramp was administering the PBT, *during* the PBT process, or *after and independently of* the PBT. It is also unclear whether the odor of alcohol Kramp smelled from Petrie's breath was only obtained because Petrie was blowing into the breathalyzer. If so—in other words, if Kramp had not noticed the odor prior to administering the PBT—then the odor of alcohol cannot be used in analyzing whether Kramp had reasonable suspicion to conduct FSTs absent her having administered the inadmissible PBT.

¶13 In order to make findings of fact on the issue and to determine whether the independent source doctrine applies, the circuit court was required to hold an evidentiary hearing and take testimony or receive other actual evidence— not just the allegations as set forth in the Compliant. Without an evidentiary

---

[6] For comparison, the information the officer was allegedly aware of here is in stark contrast to the information known to the officer in *City of Waukesha v. Zimmer*, Nos. 2021AP5130 and 2021AP1531, unpublished slip op. (WI App Mar. 23, 2022). There, the officer was aware of the following prior to administering a PBT:

> [T]hat Zimmer: (1) drove recklessly by ignoring two red light signals; (2) could not maneuver his car into a parking lot correctly but instead drove over the curb; (3) appeared confused about the officer's instructions; (4) had difficulty getting his driver's license out of his wallet; (5) had slurred speech and bloodshot and glass eyes; (6) had lost control of his bodily functions; (7) showed all six clues on the HGN test; (8) exhibited severe balance problems on the physical field sobriety tests; and (9) lacked the ability to concentrate on the number field sobriety test by not stopping at the correct end number as instructed.

*Id.*, ¶17. Moreover—and importantly—the officer in *Zimmer* testified at a suppression hearing, whereas here, the circuit court ruled based solely on the allegations set forth in the Complaint. *See id.*, ¶8.

hearing or the introduction of other sworn evidence, not only did the State fail to carry its burden of establishing that the independent source doctrine applies, there was also simply no basis upon which the court could make findings of fact that support a conclusion that the independent source doctrine applies. *See, e.g.*, ***State v. Quigley***, 2016 WI App 53, ¶47, 370 Wis. 2d 702, 883 N.W.2d 139 ("Once a compelled, incriminating, testimonial statement has been obtained, the state bears the burden of demonstrating that the evidence it wishes to use is 'derived from a legitimate source wholly independent of the compelled testimony.'" (citation omitted)); ***State v. Carroll***, 2010 WI 8, ¶45, 322 Wis. 2d 299, 778 N.W.2d 1 ("For courts determining whether untainted evidence provides an independent source, the United States Supreme Court … set forth a standard *requiring the state to bear the burden* of" establishing the doctrine applies (emphasis added)); ***State v. Anker***, 2014 WI App 107, ¶25, 357 Wis. 2d 565, 855 N.W.2d 483 ("Tainted evidence may be admissible through the independent source doctrine *if the State can show* it was also obtained by independent, lawful means." (emphasis added)).

¶14     As to Petrie's claim that his right to confrontation was violated, this court rejects that argument because the right to confrontation does not apply at suppression hearings. *See* ***State v. Zamzow***, 2017 WI 29, ¶24, 374 Wis. 2d 220, 892 N.W.2d 637 ("the Confrontation Clause does not apply during suppression hearings."). However, Petrie does, of course, have the right to cross-examine any witnesses called to testify at the suppression hearing and to challenge any evidence—that the State presents—as a part of his right to defend himself.

¶15     Accordingly, the judgment is reversed, and the matter is remanded to the circuit court to hold an evidentiary hearing on Petrie's suppression motion.

*By the Court.*—Judgment reversed and cause remanded.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.